# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3086

_____

United States of America,

          Appellee,

v.

Samuel Acosta,

          Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Southern District of Iowa.
\*
\*
\*

_____

Submitted: May 13, 2010
Filed: August 31, 2010

_____

Before WOLLMAN, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Samuel Acosta was indicted for receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B). Following a bench trial, the district court[1] issued findings of fact and an adjudication order, finding Acosta guilty on both counts. The court then sentenced Acosta to 240 months' imprisonment and 10 years of supervised release. The district court applied six Guidelines enhancements

_____

[1]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

to achieve the 240 month sentence: (1) a two-level enhancement for the material involving a prepubescent minor, under 12 years of age, pursuant to U.S.S.G. § 2G2.2(b)(2); (2) a two-level enhancement for the specific offense characteristic of distribution of child pornography, pursuant to § 2G2.2(b)(3)(F); (3) a four-level enhancement for the specific offense characteristic of having images depicting sadistic, masochistic, or other violent conduct, pursuant to § 2G2.2(b)(4); (4) a five-level enhancement for the specific offense characteristic of Acosta engaging in a pattern of sexual abuse or exploitation of a minor, pursuant to § 2G2.2(b)(5); (5) a two-level enhancement for the use of a computer for possessing, transmitting, receiving, or distributing the material, pursuant to § 2G2.2(b)(6); and (6) a five-level enhancement for the specific offense characteristic of having more than 600 images, pursuant to § 2G2.2(b)(7)(D). On appeal, Acosta argues that (1) there was insufficient evidence to support his convictions; (2) the district court erred in imposing five of the sentencing enhancements; and (3) the district court erred in denying his request for a downward variance. We reject Acosta's arguments and affirm the district court.

## I. *Background*

Agent Wade Luders of the Federal Bureau of Investigation (FBI) discovered Acosta's illegal activities during an investigation of the Ranchi child pornography message board. This internet message board allows people to "post messages, text files, video images" and other materials. One cannot find the website using conventional internet search engines. It can only be accessed by going through other child pornography message boards to which it is linked. The message board appears entirely in English. In October 2006, Luders posted what appeared to be hard-core child pornography of a four-year-old on the Ranchi message board. He collected the internet protocol addresses of persons who tried to access his posting and traced one of those addresses back to a computer at Acosta's residence. Acosta's computer

accessed Luder's posting six times between 10:10 p.m. and 10:42 p.m. CST on October 25, 2006.[2]

Special Agent David Larsen led the FBI's search of Acosta's home in Des Moines, Iowa, on February 26, 2007, pursuant to a warrant. Oscar Lopez Ramirez, who speaks English poorly, answered the door. When the FBI team entered the residence, they discovered six Hispanic male tenants without identification. Two of the tenants spoke broken English—the rest were unable to communicate in English with law enforcement. The two-story house had three bedrooms upstairs, two of which—Acosta's and Ramirez's—were locked. Law enforcement found no materials related to child pornography in the tenants' rooms. One of the police officers assisting with the search used a credit card to open Acosta's locked bedroom door. Inside the room, officers found the only computer in the residence, which contained two hard drives. They also found hundreds of writable CDs. The agents discovered a newspaper article on child pornography—written in English—in a folder lying in the room and two padlocked storage cabinets against the wall. None of Acosta's tenants had the keys to the storage cabinets, and a search of the residence failed to locate them. Unable to open the cabinets, the agents contacted Acosta at work, and he agreed to return home to unlock the cabinets and answer the agents' questions.

When Acosta arrived, he produced the keys from his pocket and unlocked the cabinets. One cabinet contained (1) two cases containing computer disks with handwritten (in English) notes associated with them, which described the contents of the disks as child pornography; (2) an index system explaining the contents of some disks (for example, "horny kids" and "Lolita"), as well as the passwords that would

---

[2]Acosta's computer was used over 40 times to access the Ranchi web site in 2006 and 2007.

be necessary to access some of the disks;[3] (3) newspaper articles dating to 2001 on child pornography investigations; (4) additional articles on child sex trafficking and child pornography; (5) lists of child pornography files downloaded from the internet and entitled "big vid list–301" and "big vid list 04" and CD labels with child pornography printed on them; and (6) writable CDs with child pornography on them. Three hard drives seized from Acosta's room had child pornography on them.

The FBI's fingerprint analyst compared the fingerprints found on 81 items seized from Acosta's room with his fingerprint card and with those of his tenants. No prints were found on 75 of the items. Some of the CD labels with child pornography printed on them and related materials from Acosta's locked storage cabinet were sent to the FBI laboratory for fingerprint analysis. Acosta's fingerprints were found on child pornography CD labels and on related materials. Handwriting analysis also revealed that Acosta's handwriting appeared on various child pornography materials.

Acosta was indicted on charges of receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B). After a bench trial, the district court issued findings of fact and an adjudication order finding Acosta guilty on both counts. Acosta was sentenced to 240 months' imprisonment and 10 years of supervised released. This sentence included the five enhancements that Acosta now challenges: (1) a two-level enhancement for distribution of child pornography, pursuant to U.S.S.G. § 2G2.2(b)(3)(F); (2) a two-level enhancement for the material involving a prepubescent minor, under 12 years of age, pursuant to § 2G2.2(b)(2); (3) a five-level enhancement for Acosta engaging in a pattern of sexual abuse or exploitation of a minor, pursuant to § 2G2.2(b)(5); (4) a two-level enhancement for the use of a computer for possessing, transmitting, receiving, or distributing the

---

[3]A review of a small sample of these disks revealed that they contained child pornography.

material, pursuant to § 2G2.2(b)(6); and (5) a five-level enhancement for having more than 600 images, pursuant to § 2G2.2(b)(7)(D).

## II. *Discussion*
### A. *Sufficiency of the Evidence*

On appeal, Acosta maintains that the government failed to prove that he knowingly received or possessed an item of child pornography. Acosta argues that the government offered no evidence identifying the user at the internet protocol address who responded to the FBI posting. Acosta contends that given this lack of evidence, the government failed to meet its burden of proof beyond a reasonable doubt that he received or possessed child pornography and that the district court erred in denying the motion for acquittal he made at the close of evidence.

"We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Scofield*, 433 F.3d 580, 584–85 (8th Cir. 2006) (internal quotations and citation omitted).

> In reviewing the sufficiency of the evidence after a bench trial, we apply the same standard that we apply when reviewing a jury verdict. This court may reverse convictions based upon insufficiency of the evidence only upon a demonstration that a rational jury would have had no choice but reasonably to doubt the existence of an element of a charged crime.

*United States v. White*, 506 F.3d 635, 641 (8th Cir. 2007) (internal quotations and citations omitted). We are unpersuaded by Acosta's arguments. Acosta notes that the cabinet in his bedroom containing child pornography did not contain any items personally identifying to him. He ignores, however, the fact that he possessed the keys to the cabinet placing him in constructive possession of its contents. "As we have said in another context, constructive possession of contraband is established when a person

-5-

has ownership, dominion or control over the [pornographic material] itself, or dominion over the premises in which the [pornographic material] is concealed." *United States v. Kain*, 589 F.3d 945, 950 (8th Cir. 2009) (internal quotations, alteration, and citation omitted). Acosta implicitly asserts that other residents in the house may have been responsible for the pornography. Yet, only Acosta resided in his house during the entire length of time that the items were acquired. Further, the record reflects that none of the other residents had access to Acosta's room, access to Acosta's storage cabinet, nor a sufficient understanding of computers or the English language to collect the materials discovered in Acosta's room. Finally, Acosta's fingerprints were found on CD labels and on related materials containing child pornography. Handwriting analysis also revealed that Acosta's handwriting appeared on various child pornography materials. Considering the record evidence, we conclude sufficient evidence supported the district court's finding of guilt beyond a reasonable doubt.

B. *Sentencing Enhancements*

Acosta challenges the district court's imposition of five sentencing enhancements. First, Acosta argues that the district court abused its discretion in (1) imposing a two-level increase for distribution pursuant to § 2G2.2(b)(3)(F); (2) imposing a five-level enhancement for behavior involving a pattern of activity involving the sexual abuse or exploitation of a minor pursuant to § 2G2.2(b)(5); (3) granting a two-level increase for an offense involving the use of a computer pursuant to § 2G2.2(b)(6); (4) another two-level increase for material involving a minor under the age of twelve pursuant to § 2G2.2(b)(2); and (5) imposing a five-level increase for the number of images involved pursuant to § 2G2.2(b)(7)(D). Acosta argues that the Guidelines adjustment for use of a computer is one that occurs in 97 percent of all such cases. Similarly, he argues that 95 percent of all prosecutions received the adjustment for material involving a minor under the age of twelve. Accordingly, he argues that these characteristics should define a base level, not increase it. Finally, Acosta submits that the selection of 600 images as the threshold for enhancement is arbitrary and unjust.

-6-

"We review interpretation of the Sentencing Guidelines de novo and a district court's application of the Guidelines to the facts for clear error." *United States v. Rutherford*, 599 F.3d 817, 820 (8th Cir. 2010).

Acosta's arguments fail. Section 2G2.2(b)(3)(F) provides that "[i]f the offense involve[d] . . . distribution other than distribution described in subdivisions (A) through (E), increase by 2 levels." In this case, the record is replete with evidence demonstrating that Acosta either distributed or was preparing to distribute child pornography. Acosta possessed tens of thousands of images of child pornography in his inventory. He possessed numerous CD labels containing explicit descriptions of child pornography printed on them. Some labels were duplicates indicating that he had made and distributed copies. As previously mentioned, Acosta's fingerprints were found on the child pornography CD labels and on related materials containing pornography. Handwriting analysis also revealed that Acosta's handwriting appeared on various child pornography materials. Moreover, the search produced an index system explaining the contents of CDs containing child pornography. Although the evidence supporting this enhancement is largely circumstantial, based on the record before us, we conclude that the district court did not abuse its discretion in concluding that Acosta distributed pornography.

Second, § 2G2.2(b)(5) provides that: "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." Paragraph 21 of Acosta's presentence investigation report (PSR) properly accepted as a finding of fact under Federal Rule of Criminal Procedure 32(i)(3)(A),[4] vividly reflects that Acosta admitted past sexual abuse of minors and his intent to continue to abuse minors in the future. Paragraph 21 of Acosta's PSR reflects a conversation Acosta had with another prisoner wherein "Acosta claimed to hold 'orgies' at his

---

[4]Rule 32(i)(3)(A) provides: "At sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact."

residence with underage girls, preferring young girls whose breasts were just starting to develop and who had little or no pubic hair." Acosta further added that "after he was acquitted, he intended to go right back to having sex with children, because he did not see that there is anything wrong with it." Based on this evidence, the district court did not abuse its discretion in imposing this five-level enhancement.

Third, § 2G2.2(b)(6) provides that "[i]f the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, increase by 2 levels." Section 2G2.2(b)(2) provides that "[i]f the material involved a prepubescent minor or a minor who had not attained the age of 12 years, increase by 2 levels." Acosta offers no legal support for his contention that because §§ 2G2.2(b)(6) and 2G2.2(b)(2) apply with high frequency in child pornography cases that these characteristics must be construed to define a base level, instead of increasing it. Accordingly, these arguments fail. "The appellant's brief must contain . . . the argument, which must contain: appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies." Fed. R. App. R. 28(a)(9)(A). "As a result, we regularly decline to consider cursory or summary arguments that are unsupported by citations to legal authorities." *United States v. Stuckey*, 255 F.3d 528, 531 (8th Cir. 2001).

Finally, § 2G2.2(b)(7)(D) provides that "[i]f the offense involved . . . 600 or more images, increase by five levels." Again, Acosta offers no support for his argument that this enhancement for depictions in excess of 600 images is arbitrary and unjust. Moreover, as the government notes, enhancing a defendant's sentence for the number of illegal items with which he was involved is a common practice throughout the Guidelines and is not unreasonable.[5]

---

[5]*See, e.g.* U.S.S.G. § 2K2.1(b) (increasing offense levels based on number of firearms in involved in the offense); U.S.S.G. § 2B1.1(b)(2) (increasing offense levels for theft related offenses based on amount of loss involved in the offense); U.S.S.G.

C. *Downward Variance*

Finally, Acosta argues that the district court erred in denying his request for a downward variance based on the 18 U.S.C. § 3553(a) factors.

> When we review a defendant's sentence to determine whether it is unreasonable with regard to the application of 18 U.S.C. § 3553(a), we apply a deferential abuse-of-discretion standard. In imposing a sentence, the district court need not engage in a mechanical recitation of the § 3553(a) factors. In explaining the sentence the district court need only set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.

*United States v. Gonzalez*, 573 F.3d 600, 607 (8th Cir. 2009) (internal quotations and citations omitted).

In its sentencing colloquy, the district court properly explained its reasons for denying the motion for a downward variance, relying primarily on the nature and seriousness of the offense and the need to deter to such criminal conduct as well as protect the public from Acosta's further crimes. *See id.* at 608. Accordingly, we find no abuse of discretion.

III. *Conclusion*

We affirm.

_____

---

§ 2L1.1(b)(2) (increasing offense levels for unlawful alien smuggling related offenses based on the number of unlawful aliens involved in the offense).