# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-1591

_____

United States of America

*Plaintiff - Appellee*

v.

Lugene Shipp

*Defendant - Appellant*

_____

No. 24-1871

_____

United States of America

*Plaintiff - Appellee*

v.

Dione Dante Mobley

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: March 20, 2025
Filed: June 24, 2025

_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Lugene Shipp and Dione Mobley were charged with conspiring to distribute heroin resulting in death and distribution resulting in death after M.W. died of heroin intoxication.  *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846.  After a bench trial, the district court[1] convicted Shipp on both counts, while it convicted Mobley only of the conspiracy count.  In these consolidated appeals, they challenge their convictions based on evidentiary rulings, the Confrontation Clause, and sufficiency of the evidence.  Mobley also argues the district court erroneously relied on acquitted conduct at sentencing.  We affirm.

## I.  Background

On January 3, 2021, M.W. purchased $80 of heroin from Kami Kinzenbach. He returned to his residence, used that heroin, and sent a text that he was "nodding the f*** out," indicating the drug was causing him to feel like he would pass out. M.W. used his phone for a few more communications and then was never heard from again.  Twenty days later, his landlord discovered his decomposing corpse in his bedroom.  When investigators searched M.W.'s bedroom, they found various syringes, one small baggie, and 0.04 grams of residue containing heroin and fentanyl.  An autopsy revealed morphine, which is a metabolite of heroin, in M.W.'s body but no signs of a fatal injury or a natural process that would have caused his death. The medical examiner therefore concluded M.W. died of heroin intoxication. Based on the autopsy and other evidence, it appeared that M.W. had consumed almost all of the $80 of heroin within two and half hours of purchase, lost consciousness, and died.

---

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

M.W.'s electronic messages with Kinzenbach, her statements to law enforcement, and camera footage from her front door linked Shipp and Mobley to the heroin she sold to M.W. Kinzenbach testified Shipp and Mobley were her sole source of heroin at the time, which she then sold to end users, and that Shipp gave her the heroin sold to M.W. on January 3. Kinzenbach's door camera showed Shipp going to her house the prior day in accordance with his standard drug drop-off routine as well as M.W. visiting briefly on January 3.

Shipp and Mobley opted for a bench trial on their charges of conspiracy to distribute resulting in death and distribution resulting in death. They both challenged the admissibility of certain electronic communications sent by M.W. and "Sidnee" based on the rule against hearsay and the Confrontation Clause. Neither declarant testified at trial. Most of these challenged messages from M.W., and all of those from Sidnee, were made in a conversation with Kinzenbach about purchasing heroin. The district court reasoned Kinzenbach's half of the conversation was admissible as co-conspirator statements so M.W.'s and Sidnee's messages were admissible for a nonhearsay purpose of providing context for Kinzenbach's statements. The district court also admitted some of M.W.'s messages for their truth under hearsay exceptions.

Ultimately, the district court found Shipp guilty of both charges but concluded there was sufficient evidence to convict Mobley of only the conspiracy count. The district court sentenced Shipp to 300 months on each count running concurrently and Mobley to 324 months, both below their respective sentencing ranges calculated under the United States Sentencing Guidelines Manual (Guidelines).

## II. Analysis

Shipp and Mobley appeal their convictions, reasserting their challenges to the admissibility of M.W.'s and Sidnee's messages and arguing there was insufficient evidence to show M.W.'s death resulted from their heroin dealing. Mobley also

challenges his sentence, claiming the district court improperly considered conduct related to his acquittal on the distribution resulting in death charge.

## A. Admission of Statements by M.W. and Sidnee

Turning first to Shipp's and Mobley's argument that admitting the messages from M.W. and Sidnee violated the rule against hearsay and the Confrontation Clause, we conclude the district court did not err. We review the admission of hearsay for abuse of discretion, *United States v. Hyles*, 479 F.3d 958, 970 (8th Cir. 2007), and "Confrontation Clause objections to the admission of evidence" are reviewed "de novo," *United States v. Dale*, 614 F.3d 942, 955 (8th Cir. 2010).

All of Sidnee's statements and most of M.W.'s messages at issue come from their communications with Kinzenbach. Kinzenbach's messages to Sidnee and M.W. were properly admitted as statements of a co-conspirator during and in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E). At the time of these messages, Kinzenbach was actively obtaining heroin from Shipp and Mobley to resell to customers, including Sidnee and M.W., and these messages coordinated such sales. Because Kinzenbach's half of the conversation was admissible under Rule 801(d)(2), the district court did not err by admitting communications from Sidnee and M.W. to Kinzenbach to provide context for Kinzenbach's statements. *See United States v. Spencer*, 592 F.3d 866, 879 (8th Cir. 2010); *United States v. Crippen*, 627 F.3d 1056, 1064 (8th Cir. 2010). Without the other side of these conversations, a factfinder "face[s] the nearly impossible task of trying to make sense out of just one side of multiple two-sided conversations." *See United States v. White*, 962 F.3d 1052, 1055 (8th Cir. 2020).

The district court admitted Sidnee's statements solely for context and did not consider them for the truth of the matter asserted, so her statements were not hearsay. *See Crippen*, 627 F.3d at 1064. While Shipp and Mobley argue that Sidnee's statements were also offered for their truth, they fail to show the district court deviated from its ruling. The district court's verdict and factual findings do not cite

the exhibit containing these messages. The district court's only mentions of Sidnee relied on citations to other trial evidence and referred to her as a heroin customer of Kinzenbach who appeared in the door camera footage.

M.W.'s statements to Kinzenbach were likewise admissible for context, but some were considered for their truth. At the bench trial, the district court declined to "dissect . . . line by line" Exhibit 36, which contained M.W.'s messages with Kinzenbach, but concluded "there are parts of it that [the court] will consider for the truth of the matter asserted and part that [it] won't." It also admitted M.W.'s text message to another individual that he was nodding out. The district court did not abuse its discretion by admitting Exhibit 36 or the nodding out text. The statements in Exhibit 36 addressed M.W.'s then-existing state of mind, detailing his intent and plan to purchase heroin from Kinzenbach in exchange for pills and money and his perception of the drug's quality after he purchased the drug. *See* Fed. R. Evid. 803(3); *United States v. Partyka*, 561 F.2d 118, 121, 125 (8th Cir. 1977) (holding out-of-court statements related to a proposition to sell drugs were admissible as "manifestations of [the declarant's] present state of mind"). Similarly, M.W.'s statement about nodding out reflected his present feeling of drowsiness while under the drug's effects. *See* Fed. R. Evid. 803(3).

Shipp argues it is possible M.W. was reflecting on some past state of mind when he made these statements since they were sent through texts and no witness who observed M.W. making these statements testified at trial to verify they reflected his then-existing mental state or present impression. But we do not require an outside observer for a statement to be admissible because a district court can find sufficient contemporaneity between the statement and the condition discussed based on the statement itself and other evidence. *See United States v. Barraza*, 576 F.3d 798, 805 (8th Cir. 2009) (concluding a declarant's journal entry about plans to travel written within a few days of her departure was sufficiently contemporaneous under Rule 803(3)). The district court reasonably inferred M.W.'s messages reflected his present impression and mental state based on other trial evidence that showed M.W. went to Kinzenbach's residence to purchase heroin at the times discussed in the

messages, followed shortly thereafter by his comments about the drug's quality and effects.

Shipp and Mobley also contend the Confrontation Clause prohibited the admission of these statements because Sidnee and M.W. did not testify at trial. We disagree. The Confrontation Clause "bars the admission at trial of 'testimonial statements' of an absent witness unless she is 'unavailable to testify, and the defendant ha[s] had a prior opportunity' to cross-examine her." *Smith v. Arizona*, 144 S. Ct. 1785, 1791 (2024) (alteration in original) (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). Statements by Sidnee and M.W. that were offered for context and not their truth do not implicate the Confrontation Clause. *See id.*; *Spencer*, 592 F.3d at 879.

M.W.'s statements admitted for their truth also fall outside the scope of the Confrontation Clause because they were not testimonial. *See Ohio v. Clark*, 576 U.S. 237, 245–46 (2015). Testimonial statements are made with the primary purpose of serving as a substitute for trial testimony under circumstances that would lead the declarant to anticipate his statements will be used at a later trial. *See id.* at 245; *Dale*, 614 F.3d at 956. Such situations usually arise when the statements are elicited by or made to a government agent involved in law enforcement. *See Clark*, 576 U.S. at 246; *United States v. Clifford*, 791 F.3d 884, 887–88 (8th Cir. 2015). Statements to friends or associates are rarely, if ever, testimonial. *See Giles v. California*, 554 U.S. 353, 376 (2008); *United States v. Wright*, 536 F.3d 819, 823 (8th Cir. 2008). M.W.'s statements were not made to a government agent or elicited in an interrogation, and the record provides no basis to conclude that M.W. spoke in anticipation of a trial. Rather, M.W.'s primary purpose in making these statements was to obtain heroin and relay his thoughts on the drug's quality and effects, and he communicated with acquaintances with no contemporaneous law enforcement connection. Mobley argues that Kinzenbach became a cooperating witness, but she had no such arrangement with the government when M.W. made the challenged statements. Thus, we conclude the admission of the statements did not violate the Confrontation Clause.

## B. Sufficiency of the Evidence

Next, Shipp and Mobley argue the government failed to prove that heroin tied to the conspiracy and distributed by Shipp caused M.W.'s death. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Golden*, 44 F.4th 1129, 1132 (8th Cir. 2022) (quoting *United States v. Acosta*, 619 F.3d 956, 960 (8th Cir. 2010)). "We apply the same standard after a bench trial as after a jury verdict and reverse 'only upon a demonstration that a rational jury would have had no choice but reasonably to doubt the existence of an element of a charged crime.'" *Id.* (quoting *Acosta*, 619 F.3d at 960).

To convict Shipp and Mobley, the government needed to prove heroin tied to their conspiracy and distributed by Shipp was the "but-for" or "independently sufficient" cause of M.W.'s death. *See United States v. Myers*, 965 F.3d 933, 937 (8th Cir. 2020) (quoting *United States v. Lewis*, 895 F.3d 1004, 1010 (8th Cir. 2018)). Shipp and Mobley contend the government failed to meet this burden because the morphine in M.W.'s body could have come from sources other than the heroin Shipp distributed. They also argue the heroin sample found near his body had fentanyl, but there was no evidence of fentanyl in M.W.'s toxicology report.

Viewing the evidence in the light most favorable to the government, a rational jury could find that heroin distributed by Shipp as part of the conspiracy was the but-for cause of M.W.'s death. M.W. obtained heroin from Kinzenbach sourced from Shipp within a few hours of his last communication. M.W. messaged Kinzenbach about purchasing $80 of heroin, which she sold to him on January 3. Kinzenbach testified that Shipp and Mobley were her only source of heroin and that Shipp supplied her with the heroin she sold to M.W. Her door camera depicted Shipp going to her house on January 2 to deliver heroin and M.W. visiting her on January 3 to purchase the drug. M.W.'s final messages indicated that he had used the heroin provided by Kinzenbach. He told her "it's really good" and texted another

-7-

person he was nodding out, a common effect of heroin use. Significantly, there was no evidence M.W. had contacted anyone else to buy heroin around January 3. Finally, the autopsy found heroin as the cause of death, given that there were no signs of any natural disease or fatal injury causing his death and a metabolite of heroin was found in his liver tissue and decomposition fluid.

Under these circumstances, a rational jury could reject Shipp's and Mobley's speculative claims that M.W. obtained heroin from another source or that some other substance led to the presence of morphine in his body. No evidence suggested that M.W. obtained heroin from another source or that he used another substance for which morphine is a metabolite around the time of his death. While he had multiple reusable syringes near his body, only one plastic baggie was discovered in his room after his death. Moreover, M.W. received about a half gram of heroin from Kinzenbach, which is four to five times a typical single dose of heroin, but only 0.04 grams of unused residue was found in his room. The medical examiner's testimony also provided a reasonable basis to explain why fentanyl could be found in the heroin residue in M.W.'s room but not in his toxicology report. She noted the autopsy and toxicology report were hindered by the decomposition of M.W.'s body so she could not use the typical best sources for toxicology testing. She also explained that although fentanyl was not found, it did not mean that he had not used a substance containing fentanyl, particularly given the state of his body at the time of examination. Altogether, we conclude there was sufficient evidence to show M.W. consumed nearly a half gram of heroin sourced from Shipp as part of the defendants' conspiracy, and M.W. died from it.

### C. Use of Acquitted Conduct

Finally, Mobley argues the district court violated his Fifth and Sixth Amendment rights by considering M.W.'s death and drug quantities associated with distribution at his sentencing since he was acquitted of distribution resulting in death. But Mobley was convicted of conspiring to distribute heroin resulting in M.W.'s death, so M.W.'s death and the drug distribution of that conspiracy could properly

be considered by the district court in calculating his Guidelines range and in imposing his sentence.  *See* U.S.S.G. §§ 1B1.3(a)(1), 2D1.1.  *See also* 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").  Even if we were to assume the district court was unable to consider acquitted conduct, it did not do so here.[2]  As such, we reject Mobley's argument.

### III. Conclusion

In light of the foregoing, we affirm the convictions and sentences of both Shipp and Mobley.

_____

---

[2]The Guidelines in effect at Mobley's sentencing and our precedent permitted the district court to consider all conduct proven by a preponderance of the evidence in determining the advisory Guidelines range.  *See United States v. Ruelas-Carbajal*, 933 F.3d 928, 930 (8th Cir. 2019); U.S.S.G. §§ 1B1.3(a), 6A1.3(a) (2023).  The district court found Mobley distributed heroin on other occasions, just not the specific quantity that caused M.W.'s death.  Assuming for argument's sake that Mobley's acquittal of the one instance of distribution charged could be construed as an acquittal of distribution generally, that finding allowed the district court to consider Mobley's other instances of distributing controlled substances at sentencing.  *See Ruelas-Carbajal*, 933 F.3d at 930.