# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1351
_____

United States of America

*Plaintiff - Appellee*

v.

Jimmy Clyde Timberlake

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: January 16, 2026
Filed: March 20, 2026
_____

Before SMITH, BENTON, and ERICKSON, Circuit Judges.
_____

BENTON, Circuit Judge.

A jury convicted Jimmy C. Timberlake of being a felon in possession of a firearm, possession of a firearm in furtherance of a drug-trafficking crime, and possession with intent to distribute 40 grams or more of fentanyl, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(c)(1)(A), and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The district court[1] sentenced him to 180 months in prison. On appeal,

_____

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

he challenges the admission of a non-testifying witness's statement and his prior drug-trafficking conviction. Having jurisdiction under 18 U.S.C. § 1291, this court affirms.

## I.

In March 2020, a confidential informant told Springfield, Missouri police that Timberlake was dealing heroin and fentanyl. The informant said Timberlake carried a gun and used two different phones, which police began tracking.

On April 20, Officer Eric Pinegar followed Timberlake to a convenience store, where he parked a rented Ford Ranger. A passenger from another car approached, spoke with Timberlake, then returned to their car. They both left. Pinegar believed a drug deal occurred, though he saw no exchange of drugs or cash.

The next day, Pinegar saw Timberlake driving a rented Chevrolet Traverse. Two days later, an officer saw the Traverse parked at the home of Timberlake's girlfriend.

On May 3, GPS showed Timberlake traveling from Springfield to St. Louis and back. Pinegar believed the trip involved buying and transporting drugs. The next day, he followed Timberlake, now driving a rented Dodge Durango, to the girlfriend's home. Pinegar watched him enter the garage, return to the car, remove something, and place it in the curbside trash.

On May 5, Pinegar followed Timberlake to Walmart, where he bought a phone. The next day, Pinegar examined the curbside trash. He found an energy drink can with a false bottom and empty sandwich-bag boxes. Returning to the girlfriend's home, Pinegar saw Timberlake leave in the Durango. Following it, he told Officer Bradley Nicholson to stop him for driving with a suspended license. Stopped, Timberlake consented to a search of himself and the Durango. A marijuana cigar was found.

On May 8, Pinegar saw a rented Ford Expedition in the girlfriend's driveway. Later that day, officers, with a search warrant, entered the home and detained Timberlake. On the kitchen counter they found Timberlake's wallet, a loaded gun, a scale, an empty sandwich-bag box, sandwich bags, $1,020 in cash, Ford keys, and a knife and a spatula with white powder residue. Above the refrigerator, they found another scale and a bag of sugar. In the laundry room were three phones, bags, and 74 grams of fentanyl. In a bedroom were two guns.

During the search, the girlfriend told Pinegar the guns were not hers. Timberlake admitted the cash and phones were his but denied owning the guns or knowing the substance was fentanyl. He said he had been "messing" with the girlfriend for about a month and that she "don't know [s__t]" because she is "a good girl."

At the county jail, Timberlake said he knew large-scale drug dealers and felons with guns, and that the drugs found appeared to be a large quantity because he had mixed in sugar.

Before trial, the government filed notice to introduce Timberlake's 2008 drug-trafficking conviction. Timberlake objected to the evidence at the jury instruction conference. The district court ruled it admissible, instructing him to object to it when introduced. At trial, when the government introduced the conviction, Timberlake said "no objection."

During cross-examination, Timberlake questioned Pinegar's failure to test the guns for DNA or fingerprints. Pinegar replied that testing was unnecessary because one gun was next to Timberlake's wallet and Ford keys, and the girlfriend denied owning the guns. Timberlake objected "hearsay," which the district court overruled.

The jury convicted Timberlake. The district court sentenced him to 120 months for possessing 40 grams or more of fentanyl with intent to distribute and as

a felon in possession of a firearm, to run consecutively with 60 months for possession of a firearm in furtherance of a drug-trafficking crime. Timberlake appeals.

## II.

Timberlake argues his Sixth Amendment confrontation rights were violated by the admission of a hearsay statement from the girlfriend—a non-testifying witness. This court reviews for plain error if a defendant fails to object on constitutional grounds—as Timberlake did here. *See United States v. Rodriguez*, 484 F.3d 1006, 1013 (8th Cir. 2007) ("Because [the defendant] did not raise a Confrontation Clause objection to this testimony at trial, we review his claim for plain error.").

Plain error requires (1) an error, (2) that is plain, and (3) that affects substantial rights. *See United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc), *citing United States v. Olano*, 507 U.S. 725, 732–36 (1993). This court may correct the error only when it "'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Jeffries*, 569 F.3d 873, 876 (8th Cir. 2009), *quoting Olano*, 507 U.S. at 736.

The Confrontation Clause generally bars the admission of testimonial statements of witnesses not at trial, unless the witnesses were unavailable to testify and the defendant had a prior opportunity to cross-examine. *See United States v. Lee*, 374 F.3d 637, 644 (8th Cir. 2004), *citing Crawford v. Washington*, 541 U.S. 36, 42 (2004). Timberlake notes that Pinegar's testimony about the girlfriend's statement—in response to police questioning during the execution of a search warrant—was testimonial. *See Crawford* 541 U.S. at 52–53 & n.4 ("Statements taken by police officers in the course of interrogations [in its colloquial sense] are also testimonial under even a narrow standard.").

Although the girlfriend's statement may be testimonial, it was not hearsay. *See id.* at 59 n.9 ("The [Confrontation] Clause also does not bar the use of testimonial

statements for purposes other than establishing the truth of the matter asserted."). While cross-examining Pinegar, Timberlake challenged the propriety of the investigation, emphasizing that police did not obtain DNA and fingerprint evidence from the drugs and guns found in the home. On redirect, the government asked Pinegar to explain why that evidence was not collected. Pinegar testified that a gun was in plain view next to items belonging to Timberlake and that the girlfriend could have claimed ownership of the guns but did not.

Pinegar's statements were "outside the realm of hearsay" because "the propriety of the investigation [was] at issue." *United States v. Shores*, 700 F.3d 366, 374. *See **United States v. Velazquez-Rivera***, 366 F.3d 661, 666 (8th Cir. 2004) ("An out-of-court statement used to explain why police took a certain action in their investigation is not hearsay."); ***United States v. Brown***, 560 F.3d 754, 764 (8th Cir. 2009) (same). *See generally **United States v. Shipp***, 141 F.4th 940, 945 (8th Cir. 2025) (statements "offered for context and not their truth do not implicate the Confrontation clause"); **Fed. R. Evid. 801(c)** (hearsay is an out-of-court statement offered "to prove the truth of the matter asserted").

Because the Confrontation Clause was not implicated, the district court did not plainly err.

## III.

Timberlake argues the district court abused its discretion by admitting evidence of his 2008 drug-trafficking conviction. This court would normally review the district court's admission of evidence under Rule 404(b) for abuse of discretion. *See **United States v. Jackson***, 856 F.3d 1187, 1190 (8th Cir. 2017).

After the district court instructed Timberlake to object when the evidence was introduced, he waived any objection by stating "no objection" to the admission of the certified copy of his 2008 drug-trafficking conviction. *See **United States v. Taylor***, 44 F.4th 779, 793 (8th Cir. 2022) (finding that a defendant waived his

-5-

objection to an officer's testimony by "indicat[ing] the government's proposed questions were 'okay' and 'fine'"). *See generally **United States v. Harrison***, 393 F.3d 805, 806 (8th Cir. 2005) ("waiver is the 'intentional relinquishment or abandonment of a known right'"), *quoting **Olano***, 507 U.S. at 733.

Since there was no objection, there was no error in the admission of the 2008 drug-trafficking conviction.

## IV.

Timberlake argues this court should reverse his conviction based on the cumulative effect of the alleged errors. "We may reverse on the basis of cumulative error only where the case as a whole presents an image of unfairness resulting in the deprivation of the defendant's constitutional rights, even though none of the claimed errors is itself sufficient to require reversal." *United States v. Baldenegro-Valdez*, 703 F.3d 1117, 1124–25 (8th Cir. 2013). Here, there was no unfairness resulting in a constitutional deprivation. *See generally **United States v. Anderson***, 783 F.3d 727, 751 (8th Cir. 2015) ("Because we reject all of Anderson's claimed errors, his cumulative-error argument fails.").

\* \* \* \* \* \* \*

The judgment is affirmed.

_____