# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1116
_____

United States of America

*Plaintiff - Appellee*

v.

Jamillo Donte Spight

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 23, 2015
Filed: April 4, 2016

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Jamillo Donte Spight challenges the sufficiency of the evidence used to convict him of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Spight also argues that the district court[1] should not have admitted into evidence expert testimony from an ATF[2] agent because it lacked proper foundation. Additionally, Spight asserts that his trial counsel provided ineffective assistance by making an evidentiary stipulation and not adequately investigating the case. Lastly, Spight contends that the government failed to disclose exculpatory evidence during discovery. We affirm.

## I. *Background*

In September 2013, a nightclub security camera recorded Spight enter the establishment with a loaded handgun. In addition, several eyewitnesses observed him in possession of the weapon. In fact, an unarmed security guard, Eric Wasson, wrestled the gun from Spight's grasp. The gun discharged twice during the scuffle. Fortunately, the shots injured no one. Wasson then handed the gun to Jonathan Price, the nightclub's owner, who had rushed to the commotion. Standing nearby, Annikki Davis, another unarmed security guard, witnessed the entire incident.

Spight was arrested and charged with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At Spight's bench trial, Wasson, Price, and Davis testified. The government also admitted the video from the security camera. Spight challenged the credibility of both Wasson and Davis on two bases. First, both witnesses were themselves convicted felons. The district court "[took] into account their criminal records" and concluded that "their testimony was credible with respect to their observations and identification of [Spight] and their testimony regarding his possession of a firearm." The court based its conclusion upon its "evaluation of their testimony, in light of all of the evidence before the Court, including the DVD video." Second, Price indicated that he had helped wrestle the gun from Spight, which

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota

[2]Bureau of Alcohol, Tobacco, Firearms and Explosives

contradicted Wasson's testimony that he took the gun from Spight and then handed it to Price. On the basis of the video evidence that supported Wasson's testimony, the district court accepted Wasson's version of events, noting that "[t]his minor conflict in the testimony does not create a reasonable doubt as to whether [Spight] was in possession of a firearm."

As part of its case, the government had to show that the firearm had traveled in interstate commerce. The district court allowed ATF Special Agent Martin Siebenaler to testify as an expert witness. Based on his review of an ATF firearm trace report; the place of manufacture stamped into the firearm; and the fact that Smith & Wesson, the firearm's manufacturer, was not licensed to manufacture firearms in Minnesota, Agent Siebenaler opined that the firearm that Spight possessed was manufactured in Connecticut and Massachusetts and had traveled in interstate commerce to Minnesota.

The district court concluded on the basis of the admitted evidence that "the United States has proven, by proof beyond a reasonable doubt, that on or about September 21, 2013, [Spight] did knowingly and voluntarily possess in and affecting interstate commerce a firearm . . . in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2)." Accordingly, the district court entered the conviction and sentenced Spight to 212 months' imprisonment and 5 years' supervised release. Spight appeals his conviction.

## II. *Discussion*

Spight brings four challenges to his conviction: (A) the sufficiency of the evidence supporting his conviction, (B) the admission of expert testimony with respect to whether the firearm that he possessed had traveled in interstate commerce, (C) an ineffective-assistance-of-counsel claim, and (D) a discovery claim.

A. *The Evidence Was Sufficient to Support Spight's Conviction*

Spight argues that the district court erred in finding the three witnesses who testified at the trial to be credible and therefore based its guilt finding on insufficient evidence. Specifically, he points to Wasson's and Davis's criminal history and the inconsistency between Wasson's and Price's testimony, arguing that the events recounted by all three are "downright preposterous." We disagree.

"We review challenges to the sufficiency of the evidence de novo." *United States v. Johnson*, 745 F.3d 866, 868–69 (8th Cir. 2014) (citation omitted). "When reviewing the sufficiency of the evidence, we view the facts in the light most favorable to the verdict, and affirm if any rational [factfinder] could have found the defendant guilty beyond a reasonable doubt." *United States v. Ojeda-Estrada*, 577 F.3d 871, 874 (8th Cir. 2009) (citation omitted). Moreover, in "[r]eviewing the sufficiency of the evidence, it is axiomatic that [this court does] not pass upon the credibility of witnesses or the weight to be given their testimony" because "[c]redibility determinations are uniquely within the province of the trier of fact, and are entitled to special deference." *United States v. Goodale*, 738 F.3d 917, 923 (8th Cir. 2013) (second alteration in original) (quotations and citations omitted).

Spight's attempt to have this court reevaluate the credibility of the witnesses is unavailing. The district court specifically considered the question of credibility and nonetheless found the testimony to be credible because it was confirmed by video evidence. The district court found the following:

> With respect to both the testimony of Eric Wasson and Annikki Davis, the Court has taken into account their criminal records, including their prior felony records, and, based upon the Court's evaluation of their testimony, in light of all of the evidence before the Court, including the DVD video, the Court finds and concludes that their testimony was credible with respect to their observations and identification of [Spight] and their testimony regarding his possession of a firearm.

-4-

And where testimony was in disagreement with the video evidence, the district court deferred to the events depicted on the video. For example, the district court noted that

> while there is a conflict between Jonathan Price's and Eric Wasson's testimony, based upon the evidence before the Court, . . . [t]his minor conflict in the testimony does not create a reasonable doubt as to whether [Spight] was in possession of a firearm, especially given the fact that [video evidence] was admitted which confirmed Eric Wasson's testimony.

Moreover, the district court found that the video evidence independently "establishes . . . that [Spight] returned to the bar with a handgun in his hand."

In short, the district court expressly addressed the credibility of the witnesses, noting that Spight's guilt was confirmed by the surveillance video. Moreover, the video footage leaves no reasonable doubt that Spight possessed the firearm and is thus sufficient to establish Spight's guilt. The district court's harmonization of the testimony adequately addresses any contradiction between the witnesses, and the court was well within its discretion as the factfinder to credit the witnesses' testimony despite their criminal history. Accordingly, the district court correctly concluded that there was sufficient evidence from which a rational jury could conclude beyond a reasonable doubt that Spight was guilty of unlawfully possessing the firearm.

B. *The Court Properly Admitted the Expert Testimony of Agent Siebenaler*

Spight argues that the district court abused its discretion in permitting expert testimony from ATF Special Agent Siebenaler. He essentially argues that Agent Siebenaler's testimony lacked foundation and was therefore inadmissible. We disagree.

We review a "decision to admit expert testimony for abuse of discretion, according it substantial deference." *United States v. Holmes*, 751 F.3d 846, 849 (8th Cir. 2014) (citation omitted). A district court may permit a firearms expert to offer an opinion that a firearm has traveled in interstate commerce on the basis of an independently prepared firearm tracing report, the identity of the manufacturer and place of manufacture stamped into a firearm, and the location where the firearm was seized. *See United States v. Maddix*, 96 F.3d 311, 315 (8th Cir. 1996). We have also held that evidence that the manufacturer of a firearm is not licensed to manufacture firearms in the state in which the firearm was seized is sufficient to satisfy the interstate-commerce element. *United States v. Cox*, 942 F.2d 1282, 1286 (8th Cir. 1991).

In this case, Agent Siebenaler testified that he used several bases to form his opinion that Spight's gun had traveled in interstate commerce: an ATF tracing report for the firearm indicating that the gun was not manufactured in Minnesota; the identity of the manufacturer—Smith & Wesson—and the place of manufacture—Massachusetts—stamped into the firearm; and the fact that the firearm was a Smith & Wesson seized in Minnesota, a state where Smith & Wesson is not licensed to manufacture firearms. Accordingly, the district court did not abuse its discretion in admitting Agent Siebenaler's expert testimony because he based his opinion on the kinds of evidence we have previously considered sufficient.

C. *We Decline to Consider Spight's Ineffective-Assistance-of-Counsel Claim*

Spight argues that his counsel acted ineffectively under *Strickland v. Washington*, 466 U.S. 668 (1984). But "a claim of ineffective assistance of counsel is generally not a basis for direct appeal and instead should be properly raised in a 28 U.S.C. § 2255 action." *United States v. Soriano-Hernandez*, 310 F.3d 1099, 1105 (8th Cir. 2002) (footnote and citation omitted). We have enunciated only two exceptions to this general rule—"the district court has fully developed a record on the ineffectiveness claim" or "the result would otherwise be a plain miscarriage of

justice." *Id.* at 1105 n.9 (citations omitted). Neither exception applies here. Accordingly, we decline to consider Spight's *Strickland* claim.

### D. *Spight Has Not Established a* Brady *Violation*

Finally, Spight argues that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963). We review an unpreserved *Brady* claim for plain error. *United States v. Horton*, 756 F.3d 569, 575 (8th Cir. 2014). In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Spight's argument is meritless. It contains no mention of any exculpatory fact, material or otherwise, withheld by the prosecution. Accordingly, his *Brady* claim also fails, even if it were reviewed under a less onerous standard than plain error.

### III. *Conclusion*

For these reasons, we affirm Spight's conviction.

_____