# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4288
_____

United States of America

*Plaintiff - Appellee*

v.

Thomas Peterson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 17, 2017
Filed: April 4, 2018

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Defendant Thomas Peterson, a former probation officer, appeals his conviction on four counts of the deprivation of his female probationers' civil rights in violation of 18 U.S.C. § 242 and his subsequent sentence of 108 months imprisonment. Peterson argues: (1) there was insufficient evidence to support his convictions; (2) the

district court[1] erred in rejecting his theory of defense instruction; (3) the district court procedurally erred in calculating his sentence; and (4) his sentence is substantively unreasonable. We disagree and affirm Peterson's conviction and sentence.

## I. Background

Peterson was a state deputy probation officer with the District 9 Probation Office in Kearney, Nebraska. From approximately October 2010 through January 2014, Peterson's caseload was comprised entirely of the highest risk offenders—offenders who are deemed most likely to re-offend based upon their criminal history, record of compliance with supervision, and alcohol and drug abuse. It was Peterson's job to supervise these offenders, including conducting home visits, monitoring compliance with terms of release, and reporting the offenders' progress to the court. A report that the offenders failed to comply with the terms of their supervision could result in the probationers having their probation revoked, sending the offenders to jail or prison.

During the same time period, Peterson engaged in inappropriate sexual acts and inappropriate sexual contact with several of his female probationers.[2] Peterson would conduct home visits alone, despite the Probation Office's policy to send two officers, and would engage in inappropriate sexual behavior during those visits. He also engaged in sexual conduct with probationers in his office during their probation meetings. Peterson would warn the probationers when random drug tests were going to be conducted and when other probation officers were going to perform unannounced home visits, using this information to pressure his probationers into

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]The phrases "sexual act[s]" and "sexual contact" are used in accordance with their definitions in 18 U.S.C. § 2246(2)(A)-(C), (3).

repaying him with sexual favors. Peterson further coerced his probationers by frequently commenting on the power he had over them and his ability to put offenders in jail. At trial, the probationers all testified that they feared standing up to Peterson or rejecting his advances because of the authority that he had over them.

On July 29, 2016, a jury convicted Peterson of four counts of Deprivation of Civil Rights under 18 U.S.C. § 242 and one count of making False Statements to a Government Agent under 18 U.S.C. § 1001. Prior to submitting the case to the jury, Peterson requested a theory of defense jury instruction, which the district court denied. Following his conviction, the district court varied upward from the otherwise applicable Sentencing Guideline range and sentenced Peterson to 108 months imprisonment. Peterson appeals.

## II. Discussion

Peterson first makes a blanket argument that there was insufficient evidence to support his convictions for any of the four counts of depriving his female probationers of their civil rights. "We review challenges to the sufficiency of the evidence de novo." United States v. Spight, 817 F.3d 1099, 1102 (8th Cir. 2016) (internal quotation marks omitted). In doing so, "we view the facts in the light most favorable to the verdict, and affirm if any rational [factfinder] could have found the defendant guilty beyond a reasonable doubt." Id. (alteration in original) (internal quotation marks omitted). We also do "not pass upon the credibility of witnesses or the weight to be given their testimony because [c]redibility determinations are uniquely within the province of the trier of fact, and are entitled to special deference." Id. (alteration in original) (internal quotation marks omitted).

"Section 242 is a . . . civil rights statute making it criminal to act (1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States." United States v. Lanier, 520 U.S. 259, 264

(1997). An action is under color of law if the defendant misused power that he "possessed by virtue of state law and [the action was] made possible only because the wrongdoer [was] clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941); see also Neighborhood Enters., Inc. v. City of St. Louis, 540 F.3d 882, 885 (8th Cir. 2008). And, in Hawkins v. Holloway, we held that a sheriff's "repeated intentional touching of [the victim's] breasts" was sufficient to find that he deprived the victim of her constitutional rights. Hawkins, 316 F.3d 777, 785 (8th Cir. 2003).

Here, there is no question that Peterson's conduct was willful, as he does not deny that he intentionally engaged in sexual conduct with the victims; thus, the first element is satisfied. However, Peterson does argue that the evidence is insufficient to show that the victims acquiesced to his sexual advances as a result of his abuse of his state law authority. Contrary to Peterson's contention, the record is replete with evidence that he was acting under color of law, including testimony from the probationers involved that the sexual encounters occurred in his office and on home visits while Peterson was on duty and acting in the capacity of a probation officer. Furthermore, all of the probationers testified that they acquiesced because Peterson had the power to cause them to be jailed and threatened them with that power. Thus, we find that the second element is satisfied. See Spight, 817 F.3d at 1102 (stating that we do not pass on the credibility of witnesses or the weight given to their testimony); see also Johnson v. Phillips, 664 F.3d 232, 240 (8th Cir. 2011) (finding that a police officer acted under the color of law when he "first effected a traffic stop, arrested [a woman], . . . searched her car, [and] [t]hen, while wearing a police uniform and operating a police car," released her, led her to an empty parking lot, and committed an assault); United States v. Giordano, 442 F.3d 30, 45 (2d Cir. 2006) (finding that a mayor acted under the color of law when, after sexually assaulting his victims, he "threatened his victims by invoking a 'special authority' to undertake retaliatory action" like throwing them in jail or harming their families if they reported him); United States v. Contreras, 950 F.2d 232, 242-43 (5th Cir. 1991) (finding that

-4-

an on-duty police officer acted under color of law when he sexually assaulted a woman after stopping her car and detaining her to transport her to the Immigration and Naturalization Service); Griffin v. City of Opa-Locka, 261 F.3d 1295, 1304-06 (11th Cir. 2001) (finding that the city manager raped a city employee under color of law when he "invoked his authority as City Manager to create the opportunity to be alone with" her; "reminded her of his authority by saying 'I can't believe you are telling me no after everything that I have done for you'"; and "continued to invoke his authority over [the victim] to harass her and humiliate her" by "summon[ing] her to his office" and asking for a hug and making inappropriate comments in front of co-workers).

Finally, Peterson's conduct with the several victims was more egregious than the conduct in Hawkins, which we found sufficient to support a Fourteenth Amendment substantive due process claim. See Hawkins, 316 F.3d at 785. Because the record provides ample evidence that Peterson engaged in conduct that deprived his victims of their civil rights, we find that the third element is met. Therefore, we hold that there was sufficient evidence for the district court to find that Peterson committed four counts of depriving his probationer victims of their civil rights under 18 U.S.C. § 242.

Second, Peterson argues that the district court erred in rejecting his theory of defense instruction. A criminal defendant is "entitled to a theory of defense instruction if it is timely requested, is supported by the evidence, and is a correct statement of the law." United States v. Chatmon, 742 F.3d 350, 354 (8th Cir. 2014) (internal quotation marks omitted). "We review a district court's rejection of defendant's proposed instruction for abuse of discretion . . . ." Id. (internal quotation marks omitted).

Peterson argues that the jury should have been instructed that, in order to be convicted of depriving his probationers of their civil rights, he must have known both

that he used his position of power to cause the victims to submit to his demands and that the victims consented because of that influence. We are unable to find any authority supporting Peterson's instruction as a correct statement of the law, and Peterson does not cite any authority in support of his argument. See Giordano, 442 F.3d at 46-47 (rejecting the defendant's defense that the victims' fear "that he could use his power as mayor to harm them and their families cannot be relevant to whether he acted 'under color of law'" because the defendant "actively and deliberately used his apparent authority as mayor to ensure that the victims did not resist or report the ongoing abuse"). Therefore, we find that the district court did not abuse its discretion in rejecting Peterson's proposed defense instruction. See United States v. Alvarez, 878 F.3d 640, 641 (8th Cir. 2017) (per curiam) (concluding that the defendant's argument was without merit when, in part, he failed to cite authority supporting his contention); United States v. Mendoza-Gonzalez, 520 F.3d 912, 918 n.4 (8th Cir. 2008) ("Mendoza-Gonzalez cites no authority in support of this argument. We therefore reject this argument."), overruled on other grounds, 556 U.S. 1232 (2009).

Third, Peterson argues that the district court committed a procedural error by improperly calculating his Sentencing Guidelines range. "When reviewing the district court's calculation of the sentencing guidelines advisory sentencing range, [w]e review the district court's factual findings for clear error and its construction and application of the Guidelines de novo." United States v. Edwards, 820 F.3d 362, 365 (8th Cir. 2016) (alteration in original) (internal quotation marks omitted). Assuming without deciding that the district court erred in calculating Peterson's Sentencing Guidelines range, we hold that the error was harmless. When the district court explicitly states that it would have imposed the same sentence of imprisonment regardless of the underlying Sentencing Guideline range, "any error on the part of the district court is harmless." United States v. Davis, 583 F.3d 1081, 1094-95 (8th Cir. 2009); see also United States v. McGrew, 846 F.3d 277, 280 (8th Cir. 2017) ("[W]hen the court derives its ultimate sentence apart from the Guidelines and offers an alternative explanation for its sentence, such explanations may serve to prove other

-6-

identified sentencing errors harmless." (internal quotation marks omitted)). Here, the district court specifically stated at the sentencing hearing that it would have imposed the same sentence regardless of the Sentencing Guidelines calculations. Therefore, we find that any procedural error on the part of the district court in calculating Peterson's sentence was harmless. See id.

Fourth, Peterson argues that his sentence was substantively unreasonable. "When we review a defendant's sentence to determine whether it is unreasonable with regard to the application of 18 U.S.C. § 3553(a), we apply a [deferential] abuse-of-discretion standard." United States v. Ford, 705 F.3d 387, 389 (8th Cir. 2013) (internal quotation marks omitted). Furthermore, "[t]he court has substantial latitude to determine how much weight to give the various factors under § 3553(a)." Id. (quoting United States v. Ruelas-Mendez, 556 F.3d 655, 657 (8th Cir. 2009)); see also United States v. Parker, 762 F.3d 801, 812 (8th Cir. 2014) ("Where [a] district court in imposing a sentence makes an individualized assessment based on the facts presented, addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable." (alteration in original) (internal quotation marks omitted)).

The transcript of Peterson's sentencing hearing shows that the district court carefully considered the § 3553(a) factors. The court made specific reference to the nature of the crime and the characteristics of the defendant, stating that Peterson "coldly calculated" taking "advantage of especially vulnerable women" placed under his supervision. The court also stated that it imposed the sentence to reflect the seriousness of Peterson preying on these vulnerable women, "to promote respect for the law, to provide for just punishment, to afford both specific and general deterrence," and to protect the public against Peterson. Accordingly, we find that the district court properly exercised its discretion in weighing the various § 3553(a) factors and that Peterson's sentence is not substantively unreasonable. See Parker, 762 F.3d at 812.

-7-

## III. Conclusion

For the foregoing reasons, we affirm the district court in all respects.

_____