# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-3346

_____

United States of America

*Plaintiff - Appellee*

v.

Earl Tyrone McKee

*Defendant - Appellant*

_____

No. 21-3347

_____

United States of America

*Plaintiff - Appellee*

v.

Earl Tyrone McKee

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: May 13, 2022
Filed: August 2, 2022

_____

Before SMITH, Chief Judge, COLLOTON and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

After a jury trial before the district court,[1] Earl Tyrone McKee was convicted of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). McKee appeals his conviction, arguing that there was insufficient evidence to support the jury's finding that he knowingly possessed a firearm. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Shortly after midnight on August 30, 2020, Iowa City Police Department (ICPD) officers were dispatched to the Town and Campus Apartments complex after several people reported hearing gunshots. At the time ICPD Officer James Sandifer became aware of the shots-fired reports coming from Town and Campus, he was at the University of Iowa Hospitals and Clinics in Iowa City tending to a prior, unrelated matter. Officer Sandifer was familiar with and had access to video feeds from the security cameras at Town and Campus because property management had previously consulted him regarding the installation of the security cameras at the property. Officer Sandifer accessed the security cameras' video feeds using his smartphone, which depicted a dispute that broke out on the property shortly before midnight outside of the H building. During the dispute, a male subject with long dreadlocks wearing skinny jeans and white sneakers, later identified as McKee, ran up the exterior staircase of the H building to Apartment H6, retrieved a large firearm that resembled a rifle, and ran back down to the first level of the complex where he took a firing stance before running off camera. Later, ICPD officers who responded to the shots-fired reports located a cluster of ten shell casings near the area where McKee ran off camera. Shortly after McKee disappeared off camera, Officer

_____

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

Sandifer observed McKee reappear and run back to the H building and enter Apartment H6 with the firearm before exiting Apartment H6 without the firearm and running towards the P building and into Apartment P4. Officer Sandifer shared this information with his fellow officers over the radio.

Based upon the information provided by Officer Sandifer and their own review of the security camera footage, ICPD officers believed that the firearm involved in the shooting was inside Apartment H6 and the man who shot the firearm, McKee, was inside Apartment P4. Officers then posted themselves outside of Apartments H6 and P4 to ensure that the firearm and McKee, respectively, did not leave those apartments. Officer Traishondus Bunch reviewed the security camera footage from nearly midnight until the time officers set up a perimeter outside of Apartment P4 and observed only McKee enter the apartment. While posted at the front door of Apartment P4, Officer Daniel Boesen interacted with the resident of Apartment P4, who then entered the apartment. When the resident later left the apartment, he was detained by Officer Boesen, and he told Officer Boesen that there was one other person still in the apartment.

Officers obtained search warrants for Apartments H6 and P4 approximately four hours after responding to the shots-fired reports. Officers executed the search warrant for Apartment H6 first and located a firearm in a blue cooler bag in the furnace closet of the apartment. Testing later confirmed that the ten shell casings found in the area where McKee disappeared off camera were fired from this same firearm. When officers executed the search warrant for Apartment P4, they found only McKee inside the apartment.

On October 7, 2020, McKee was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). McKee pled not guilty and was tried by a jury over three days. At trial, the parties stipulated that the firearm found in Apartment H6 met the federal definition of a firearm and had been transported across a state line, McKee had been previously convicted of a crime punishable by a term of imprisonment exceeding one year, and McKee knew

that he had been previously convicted of a crime punishable by a term of imprisonment exceeding one year. The government presented numerous exhibits, including the aforementioned security camera footage, and called ten witnesses. Among the government's witnesses was James Joy, who was identified by officers as the intended target of the shooting. At the time Joy testified, he was in custody and awaiting trial and appeared pursuant to a writ ordering him to appear for testimony. Joy testified that, shortly after he arrived at Town and Campus, a group of people approached him about a prior incident that he was involved in. Joy then testified that he walked away from the group and had begun conversing with a man that he knew when someone ran past him and up the stairs. Joy stated that he looked up and saw another man that he knew pass something that "looked like a pole" to the man that ran up the stairs and, when the man came back down the stairs, he realized that the object was a gun. Joy further testified that the man pointed the gun at him and eventually fired shots at him. Joy was shown the firearm recovered from Apartment H6 and testified that it looked like the gun that the man was carrying and subsequently fired at him. When asked to identify who the man was, Joy identified McKee. On cross-examination, Joy was confronted with a statement that he gave to law enforcement on September 23, 2020, identifying the shooter from the August 30th incident as a different individual named "Twan." Joy testified that he had lied to law enforcement and McKee was the one who shot at him.

At the close of the government's case, McKee moved for a judgment of acquittal, arguing that the evidence was insufficient to demonstrate that he was in actual or constructive possession of the firearm. The district court denied McKee's motion, and ultimately, the jury found McKee guilty. The district court sentenced McKee to 120 months imprisonment and 3 years supervised release and revoked the supervised release that McKee was serving on a separate conviction, sentencing him to a consecutive 24 months imprisonment. McKee appeals only his conviction on the firearm charge.

## II.

McKee challenges the sufficiency of the evidence to support his conviction, arguing that the government failed to prove that it was McKee who possessed the firearm used in the August 30th shooting. "We review the sufficiency of the evidence de novo, considering the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict." United States v. Carnes, 22 F.4th 743, 748 (8th Cir. 2022) (citation omitted). "We will reverse 'only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" United States v. Gross, 23 F.4th 1048, 1052 (8th Cir. 2022) (citation omitted).

> Sufficiency review essentially addresses whether "the government's case was so lacking that it should not have even been submitted to the jury." That limited review does not intrude on the jury's role "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

United States v. Bull, 8 F.4th 762, 770 (8th Cir. 2021) (citations omitted).

> To support a conviction under 18 U.S.C. § 922(g)(1),

> the government must prove beyond a reasonable doubt that (1) [McKee] had been previously convicted of a crime punishable by a term of imprisonment exceeding one year; (2) [McKee] knowingly possessed a firearm; (3) the firearm was in or affecting interstate commerce; and (4) [McKee] "knew he belonged to the relevant category of persons barred from possessing a firearm."

United States v. Burning Breast, 8 F.4th 808, 812 (8th Cir. 2021) (citation omitted). McKee stipulated to elements 1, 3, and 4 and challenges only the sufficiency of the evidence to support element 2: whether he knowingly possessed a firearm. McKee argues that the evidence is insufficient to sustain his conviction because officers did not immediately establish a perimeter around Apartment P4 and it is possible that

the shooter seen running from Apartment H6 and into Apartment P4 could have exited out the back door of Apartment P4, jumped 10 to 12 feet to the ground from the balcony, which was not covered by security cameras, and escaped; McKee's physical description was not uncommon and Officer Sandifer's identification of him on the security camera footage should be disregarded; Joy's testimony was inconsistent with his prior statement and should be disregarded; and there is no security camera footage showing McKee leaving Apartment P4 and moving towards the H building prior to the shooting. We disagree.

The government presented sufficient evidence to prove that McKee knowingly possessed the firearm in question. The government presented security camera footage showing a man retrieving a firearm from Apartment H6, running down the exterior staircase of the H building with the firearm and taking a firing stance, returning to Apartment H6 and depositing the firearm, and running to Apartment P4. Officers recovered the firearm from Apartment H6 and shell casings from the area where the man briefly disappeared off camera while carrying the firearm, which testing later showed were fired from that same firearm. Security camera footage showed that McKee was the only person, besides the resident of the apartment, who entered Apartment P4 between the time of the shooting and the time officers were posted outside of the apartment, and it is inconsequential whether McKee left Apartment P4 before the shooting. Further, the intended target of the shooting, Joy, testified that it was McKee who shot at him. To the extent that McKee asks us to weigh evidence or witness credibility, specifically Joy's testimony, we note that such "jury determinations are 'virtually unreviewable on appeal.'" See United States v. Hollingshed, 940 F.3d 410, 417 (8th Cir. 2019) (citation omitted); see also United States v. Spight, 817 F.3d 1099, 1102 (8th Cir. 2016) ("[I]n '[r]eviewing the sufficiency of the evidence, it is axiomatic that [this court does] not pass upon the credibility of witnesses or the weight to be given their testimony' because '[c]redibility determinations are uniquely within the province of the trier of fact, and are entitled to special deference." (second, third, and fourth alterations in original) (citation omitted)). McKee was able to cross-examine Joy regarding inconsistencies between his prior statement to law enforcement and testimony at

trial, and McKee makes no showing that the jury's credibility determination was "internally inconsistent, based upon incoherent or implausible testimony, or directly at odds with objective evidence." <u>See</u> <u>United States v. Hodge</u>, 594 F.3d 614, 618 (8th Cir. 2010). Based on this evidence, a reasonable jury could have found that McKee knowingly possessed the firearm found in Apartment H6 on August 30th. Thus, we find the evidence sufficient to sustain McKee's conviction.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____