# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2684
_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Lee Golden

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: June 17, 2022
Filed: August 17, 2022

_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a bench trial, the district court[1] convicted Christopher Golden on one count each of receipt and possession of child pornography under 18 U.S.C. § 2252A(a)(2)(A) and (5)(B) and sentenced him to 97 months' imprisonment.

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

Golden challenges the sufficiency of the evidence to support his convictions and the district court's application of the sentencing guidelines. We affirm.

## I.

At Golden's trial, the United States called ten witnesses who testified to the information that follows. Golden was previously charged with the Colorado crime of sexual exploitation of children in 2014. At the time, he admitted to using child-pornography-related search terms, to using the Ares peer-to-peer filesharing program to receive child pornography, and to having a "problem dealing with child pornography." The resulting warrant for his arrest was active until September 9, 2018, when the Pennington County, South Dakota Sheriff's Office arrested him in Rapid City, South Dakota. The arresting officers retrieved two cellphones that belonged to Golden and found two pink socks, a doll, and a USB drive in the saddle bag of Golden's motorcycle. A search of Golden's residence yielded another cellphone, a laptop, an external hard drive, and a child-sized, skeleton-themed dress. Golden's former roommate testified that Golden had been close with her prepubescent daughter whose socks were found in the saddlebag of Golden's motorcycle. The roommate also explained that the doll was inspired by her daughter and that the skeleton-themed dress was a Halloween costume Golden had made for her daughter.

Forensic Examiner Hollie Strand conducted a forensic examination of the seized devices. Examiner Strand located four images of suspected child pornography, labelled as Exhibits 1 to 4, on one of Golden's phones. The images were found within a "thumb data four file" from a gallery application. A thumb data four file is a data file used by a gallery application to index the "thumbnail images" in the gallery application. Images in a gallery application are created using the camera or screenshot function or from saving images located in a text message, email, or on the internet. Examiner Strand concluded that a user must have viewed these images at some point.

Examiner Strand also located eight images and one video of suspected child pornography, labelled as Exhibits 5 to 13, on the external hard drive. Exhibits 5, 6, and 8 to 13 had been "last modified" on August 28 or 29, 2018. To "modify" a file on an external drive, a user must connect the drive to another device and open, view, edit, or save the file. Golden's laptop contained the Ares filesharing program, which had last been used on August 29, 2018. The USB drive had last been connected to the laptop on August 29 or 30, 2018. Exhibit 7 was found in unallocated space, and Examiner Strand did not state when it was last accessed or modified.

Besides these images and the video, Examiner Strand found other evidence showing that Golden's devices might have been used to receive and possess child pornography. On the cellphone containing Exhibits 1 to 4 were fifteen additional images of suspected child pornography. The USB drive contained other images of nude children in an outdoor setting, suspected child pornography, and child erotica, and the SD card from one of Golden's phones contained images of prepubescent females wearing skeleton-themed makeup. Some of the images of nude children had been edited in Microsoft Photo Editor on August 29, 2018. Editing an image changes its "hash value," making it more difficult for investigators to trace. On another cellphone there was suspected child pornography, internet artifacts referencing "tiny teens," and a Google Chrome bookmark for a website called "jail bait gallery." The bookmark redirected Examiner Strand to "teengallery.com," which displayed images of nude adolescent girls. The laptop contained two images of suspected child pornography and other images of children, including ones watermarked "Russian Lolita" and "Lolitasprose.com." Examiner Strand located different images of suspected child pornography from the same series on multiple devices. Images across all devices consistently focused on prepubescent females who were nude or wearing skeleton makeup or costumes. Examiner Strand also found various user-downloaded programs on the devices. The Ares filesharing program was present on the laptop. The laptop also had a CCleaner program set to "clean" the laptop automatically every time it started. One of the phones contained two "proxy" applications, which increase a user's online anonymity, and two file-recovery applications. Two file-shredding applications (which prevent traces of files

from remaining on the phone after deletion), a dark-web search engine, and a VPN (virtual private network) were found on another phone.

At a bench trial, the district court found that Exhibits 1 to 13 each contained child pornography. The district court found Golden guilty of one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). It sentenced him to 97 months' imprisonment, applying one four-level enhancement for an image involving sexual exploitation of infants or toddlers, *see* U.S.S.G. § 2G2.2(b)(4)(B), and another because of the large number of child pornography images involved in the offense, *see* § 2G2.2(b)(7)(C). Golden appeals, challenging the sufficiency of the evidence to support his convictions and the district court's application of the sentencing guidelines' enhancements.

## II.

"We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Acosta*, 619 F.3d 956, 960 (8th Cir. 2010). We apply the same standard after a bench trial as after a jury verdict and reverse "only upon a demonstration that a rational jury would have had no choice but reasonably to doubt the existence of an element of a charged crime." *Id.* "Where the evidence rationally supports two conflicting hypotheses, we will not disturb the conviction." *United States v. Hensley*, 982 F.3d 1147, 1157 (8th Cir. 2020) (internal quotation marks omitted). To convict Golden of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(a) and possession of child pornography in violation of (a)(5)(B), "the government had to prove beyond a reasonable doubt that [he] knowingly received or possessed child pornography." *See United States v. Kelley*, 861 F.3d 790, 796 (8th Cir. 2017) (internal quotation marks omitted). "The convictions for receipt and possession of child pornography turn on essentially the same requirements and evidence, and thus will be discussed together." *Id.*

According to Golden, a rational jury could not have found that the evidence proved beyond a reasonable doubt that he *knowingly* received or possessed the child pornography found on his devices. The Government, he argues, failed to present evidence that he ever accessed and viewed the thumbnails labelled as Exhibits 1 to 4. He also claims that the Government did not prove that he knew of the specific existence of Exhibits 5, 6, and 8 to 13 because they could have been part of a mass download of photos to be used as inspiration for his art. He also notes that Exhibit 7 was found in unallocated space, making it impossible to determine whether or when it was accessed by any user; therefore, Golden argues, the Government could not prove that this file was knowingly possessed or received by Golden. Drawing all reasonable inferences against Golden, *see Acosta*, 619 F.3d at 960, we cannot agree.

First, the thumbnails in Exhibits 1 to 4 support the district court's finding that Golden knowingly received and possessed those images or their originals. Examiner Strand testified that a thumbnail indicates that the original of that image was in the phone's gallery application at some point. And an image can be in a gallery only if a user takes a photo; screenshots an image; or saves a photo from a text message, an email, or the internet. According to Examiner Strand, a user must have viewed at least the thumbnail version of the original images at some point. The phone belonged to Golden, and there was no evidence that others had access to it. Thus, a rational jury could find beyond a reasonable doubt that Golden knowingly received and possessed at least one of the images in Exhibits 1 to 4. *See United States v. Huyck*, 849 F.3d 432, 443 (8th Cir. 2017) (finding sufficient evidence of knowing possession where the government found thumbnails on the defendant's hard drive, presented evidence that thumbnails indicate the prior existence of originals on the hard drive, and showed that the defendant was the only person with access to the hard drive).

Second, circumstantial evidence surrounding Exhibits 5, 6, and 8 to 13 supports the district court's finding that Golden knowingly possessed and received at least one of the images in these exhibits. Between August 28 and 30, someone on

Golden's laptop used the Ares filesharing program, which Golden had previously used to receive child pornography; the files labelled as Exhibits 5, 6, and 8 to 13 were "modified," meaning a user opened, viewed, saved, or edited them using a device connected to the external drive; the laptop was connected to Golden's USB drive; and images of nude children on Golden's USB drive were edited on Microsoft Photo Editor, making them more difficult for investigators to trace. Again, there was no evidence that anyone else used these devices. From these facts, a rational jury could find beyond a reasonable doubt that Golden knowingly possessed and received at least one of the images in the exhibits. *See Kelley*, 861 F.3d at 797 (holding that a jury could infer that a child-pornography defendant who used Ares had knowledge of illegal files when he was the primary user of a device when child pornography files were downloaded to the device); *United States v. Worthey*, 716 F.3d 1107, 1113-14 (8th Cir. 2013) (finding sufficient evidence of knowing receipt where evidence showed files had been downloaded through a filesharing program that required a user to initiate a download); *United States v. Koch*, 625 F.3d 470, 478-79 (8th Cir. 2010) (concluding that there was sufficient evidence of knowing possession where, among other things, images of child pornography were found in files that a user had to create manually and there was evidence that some images had been moved or deleted).

Third, other evidence supports these inferences. Golden's devices contained thirteen child-pornography files, several suspected child-pornography files, and hundreds of other images of children—many erotic and some watermarked with child-pornography-related terms. These same devices also contained user-installed programs set up to share and receive files over the internet, to "clean" the laptop every time it started, to recover deleted files, to provide online anonymity through a "proxy," to shred files and prevent them from being traced after deletion, to search the dark web, and to set up a private network. Golden's devices also contained internet artifacts referencing "tiny teens" and a Chrome bookmark for "jailbaitgallery.com," a website with nude photos of adolescent females. Suspected child pornography from the same series was found on multiple devices, and images across all devices centered around nude prepubescent females and prepubescent

females dressed as skeletons. Golden demonstrated a unique preference for the skeleton theme through the presence of skeleton-themed photos found with the child pornography, suspected child pornography, and child erotica on his devices and the skeleton-themed dress he made for his roommate's prepubescent daughter, whose socks he was carrying at the time of his arrest. That the skeleton-themed photos match his unique preference suggests that he was the one who downloaded the skeleton-themed images, and therefore knowingly received them. And Golden previously admitted that he had "a problem dealing with child pornography," that he had previously used the Ares filesharing program to access child pornography, and that he knew and used common child-pornography-related search terms in the past. Combined, this evidence supports the reasonable inference that Golden used technology to seek out child pornography that suited his tastes and to avoid detection—behavior indicating knowing receipt and possession. *See United States v. Fletcher*, 946 F.3d 402, 406 (8th Cir. 2019) (holding that there was sufficient evidence of knowing receipt where the defendant downloaded a file-sharing program, used common child-pornography search terms, deleted files using the CCleaner program and subsequently redownloaded the files, and admitted to recognizing that some of the images were child pornography); *United States v. Smith*, 910 F.3d 1047, 1050-51 (8th Cir. 2018) (finding sufficient evidence of knowing receipt where the defendant was an intermediate-to-advanced computer user who understood the Ares filesharing program, used common child-pornography search terms, and employed a file-deletion program).

### III.

Golden next argues that the district court erred in its application of U.S.S.G. § 2G2.2(b)(4)(B), which directs the district court to increase the defendant's base offense level by four levels "[i]f the offense involved material that portrays . . . sexual abuse or exploitation of an infant or toddler," claiming that the image at issue does not involve the sexual exploitation of a toddler. He also contests the district court's application of a sentencing enhancement under § 2G2.2(b)(7)(C), which requires a four-level increase to the base offense level if the offense involved "at

least 300 images, but fewer than 600," claiming that the district court erred in finding that the offense involved between 300 and 600 images. We ordinarily review the district court's construction and application of the guidelines *de novo*, *United States v. McGrew*, 846 F.3d 277, 280 (8th Cir. 2017), and its factual findings for clear error, *United States v. Finck*, 407 F.3d 908, 913 (8th Cir. 2005). But "[w]hen the district court explicitly states that it would have imposed the same sentence of imprisonment regardless of the underlying Sentencing Guideline range, any error on the part of the district court is harmless." *United States v. Peterson*, 887 F.3d 343, 349 (8th Cir. 2018) (internal quotation marks omitted); *see also McGrew*, 846 F.3d at 280 ("[W]hen the court derives its ultimate sentence apart from the Guidelines and offers an alternative explanation for its sentence, such explanations may serve to prove other identified sentencing errors harmless." (internal quotation marks omitted)).

Here, "the district court explicitly state[d] that it would have imposed the same sentence of imprisonment regardless of the underlying Sentencing Guideline range." *See Peterson*, 887 F.3d at 349. The district court calculated an advisory sentencing guidelines range of 97 to 121 months' imprisonment and sentenced Golden to 97 months' imprisonment. In imposing the sentence, the district court stated, "[W]hether I'm sentencing under the federal sentencing guidelines . . . or under the 3553(a) factors, that balance results in the same sentence in my mind." Because the district court would have imposed the same sentence under the § 3553(a) factors as it did under the guidelines, any error in its application of the guidelines was harmless. *See Peterson*, 887 F.3d at 349.

## IV.

For the foregoing reasons, we affirm Golden's convictions and sentence.

_____