# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2483
_____

United States of America

*Plaintiff - Appellee*

v.

Erik Vivier

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: May 15, 2025
Filed: July 28, 2025
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

BENTON, Circuit Judge.

A jury convicted Erik J. Vivier for sexual abuse of an incapacitated victim and sexual abuse of a minor in violation of 18 U.S.C. §§ 2242(2), 2243(a) and 1153. The district court[1] denied his motion for a judgment of acquittal on sexual abuse of an

_____

[1]The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota.

incapacitated victim. He appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

The government alleged Vivier had sex with J.M., a 15-year-old, while she was incapacitated. According to J.M., she was familiar with Vivier because he was her boyfriend Isaiah Poitra's uncle. That day, J.M. had been drinking, becoming "dizzy" and "light-headed." Leaving her aunt's house nearby, she went for a walk to clear her head. She was "staggering" and "walking like a zombie." When she walked by Vivier's home, he invited her in. Her uncle and cousin, who she was not close with, were also at his home. She said she barely spoke to them. Vivier handed her a beer while she sat on the couch. She testified to feeling "nauseous," "light-headed," and not in control of her body. She said Vivier invited her to lie down in his spare bedroom, which she did. After a few minutes, she felt someone behind her, taking off her clothing. She said Vivier pulled her on top of him and began having penile-vaginal sex with her. She recalled sitting upright and facing toward his head. She testified this lasted for about five to ten minutes before she "f[e]ll onto the bed." She then put her clothes back on and asked if she could go home. She said she "blacked out" when she left and did not "even really remember" getting back to her aunt's house. Later that night, she told Poitra that "his uncle raped" her, which he corroborated.

According to her uncle and cousin, J.M. did not appear drunk at Vivier's home. Neither spoke with her much. Both were smoking marijuana. They left shortly after J.M. arrived.

In Vivier's first FBI interview, he denied knowing J.M. but later said he saw her one time. He denied having sex with her. In a later interview, he said he did not remember any sex with J.M. because, if it happened, he was probably drinking and using methamphetamine. Vivier then said he "came to" when J.M. was on top of him—with his penis in her vagina—and told her to get off. Vivier said he was not in the right state of mind when J.M. had sex with him.

At trial, the government called FBI Special Agent Timothy Wittman, who had interviewed Vivier. Agent Wittman testified to his training and experience, including techniques to determine an interviewee's truthfulness, which he said he used with Vivier. He opined that Vivier's statements in the interview were untruthful. Vivier moved to strike Agent Wittman's undisclosed expert testimony, alternatively requesting a curative instruction. The district court found that "the testimony of the witness included technical training and other specialized knowledge." It denied the motion but gave a curative instruction.

The jury convicted Vivier of sexual abuse of an incapacitated victim and sexual abuse of a minor. Vivier moved for a judgment of acquittal on sexual abuse of an incapacitated victim. The district court denied the motion. Vivier appeals.

## II.

Vivier challenges the denial of his motion for a judgment of acquittal on sexual abuse of an incapacitated victim. This court reviews the denial of a motion for a judgment of acquittal "*de novo*, evaluating the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor." **United States v. Parker**, 871 F.3d 590, 600 (8th Cir. 2017). "The underlying standard of review is deferential to the jury's verdict." **United States v. Goodwin**, 719 F.3d 857, 860 (8th Cir. 2013). The court will reverse if "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." **United States v. Ways**, 832 F.3d 887, 894 (8th Cir. 2016).

Section 2242(2) criminalizes knowingly engaging in a sexual act with someone who is "(A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." **18 U.S.C. § 2242(2)**. The government must prove beyond a reasonable doubt that: the victim *was* incapacitated, and the defendant *knew* the victim was incapacitated. **United States v. Bruguier**, 735 F.3d 754, 760–61 (8th Cir. 2013) (en banc). In other words, the defendant must have knowledge of

the victim's inability to grant consent, not just knowingly engage in a sexual act with the victim. *See id.*

Vivier argues that the government failed to prove that J.M. *was* incapacitated. But J.M. testified that she: had been drinking alcohol, which made her feel light-headed, dizzy, and nauseous; was "walking like a zombie"; drank more alcohol at Vivier's home and felt intoxicated; and, in Vivier's spare bedroom immediately before the incident, felt like she did not have control over her body. This evidence is sufficient for a reasonable jury to find beyond a reasonable doubt that J.M. was incapacitated. *See United States v. Aungie*, 4 F.4th 638, 643 (8th Cir. 2021) (one witness account alone is sufficient to sustain a conviction). *See also United States v. Peterson*, 887 F.3d 343, 347 (8th Cir. 2018) ("credibility determinations are uniquely within the province of the trier of fact, and are entitled to special deference" (cleaned up)).

Vivier also argues that no testimony indicated he *knew* J.M. was incapacitated. But J.M. testified that Vivier: gave her more alcohol; invited her to lie down in the spare bedroom; undressed her himself; and pulled her on top of him. A reasonable jury could infer from this evidence that Vivier knew J.M. was incapacitated. *See United States v. Pace*, 922 F.2d 451, 452 (8th Cir. 1990) ("giving the government the benefit of all reasonable inferences from that evidence"). *See also United States v. Brown*, 702 F.3d 1060, 1063–64 (8th Cir. 2013) ("the evidence need not preclude every outcome other than guilty"). Because a reasonable jury could find Vivier guilty of sexual abuse of an incapacitated victim beyond a reasonable doubt, the district court properly denied the motion for a judgment of acquittal.

## III.

Vivier contends that the district court should have declared a mistrial because of Agent Wittman's undisclosed expert testimony. A defendant who invites the district court to take a particular action waives his right to claim on appeal that the action was erroneous. *See United States v. Campbell*, 764 F.3d 874, 879 (8th Cir. 2014). In other words, a "defendant cannot complain on appeal that the court

proceeded in a way that his lawyer requested." ***United States v. Corn***, 47 F.4th 892, 895 (8th Cir. 2022).

Vivier requested, as an alternative to striking Agent Wittman's undisclosed witness testimony, the following curative instruction:

> You have heard testimony from Special Agent Wittman. Individuals who have become experts in a field may, sometimes, testify to their opinions on matters in that field. Special Agent Wittman did not testify as an expert witness in this case. You should not consider the testimony he provided as expert opinion testimony in any particular field.
>
> You should consider Special Agent Wittman's testimony just like any other testimony. You may accept or reject it and should give it as much weight as you think it deserves.

The district court gave this proposed curative instruction almost word-for-word. By requesting this instruction, Vivier invited any error from these two paragraphs. He cannot now argue that they warrant a mistrial.

Still, Vivier disputes the court's insertion of two sentences into his proposed instruction, which added: "Special Agent Wittman has testified to his opinion of Mr. Vivier's truthfulness. You should disregard his opinion to the extent that it is based on his specialized knowledge, skill or training."

Vivier contends the district court's instruction erroneously allowed the jury to consider Agent Wittman's opinion about the truthfulness of Vivier's statements. An expert may not opine on the believability or truthfulness of a witness's story. *See* ***United States v. Kime***, 99 F.3d 870, 884 (8th Cir. 1996), *discussing* **Fed. R. Evid. 702**. Nor may a lay witness address "the specific believability and truthfulness of [a witness's] story." ***United States v. Azure***, 801 F.2d 336, 341 (8th Cir. 1986), *discussing* **Fed. R. Evid. 608(a)** (only allowing testimony about a witness's *character* for truthfulness). Accordingly, the district court erred by limiting the curative instruction "to the extent" Agent Wittman's opinion of Vivier's relied on his expertise.

Because Vivier did not move for a mistrial, this court reviews for plain error. *See* ***United States v. Waldman***, 310 F.3d 1074, 1078 (8th Cir. 2002). To prevail under plain error review, the defendant must show "(1) an error, (2) that is plain, (3) that affects [the defendant's] substantial rights," and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." ***United States v. Lovelace***, 565 F.3d 1080, 1087 (8th Cir. 2009). "To establish that the error affected his substantial rights, [Vivier] must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." ***United States v. Alexander***, 114 F.4th 967, 975 (8th Cir. 2024) (cleaned up).

Even without Agent Wittman's testimony about the untruthfulness of Vivier's statements, inconsistencies called the credibility of Vivier's story into question: he initially denied knowing or having ever met J.M.; he then acknowledged knowing her but denied any sexual activity; he later admitted to a sexual act with J.M., claiming he thought that she was over sixteen years old and that the acts were consensual; he eventually stated he didn't "need no kids from no minors." On the other hand, J.M.'s story remained consistent. Other witnesses corroborated her version of events. Vivier has not shown a reasonable probability that without Agent Wittman's opinion testimony the outcome would be different.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

-6-